IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| CURTIS GRANT SCHANTZ, ) | |
| JANE MARIE SCHANTZ, ) | |
| ) | Bankruptcy No. 16-0400 |
| Debtors. ) | |
| ) | |
| CURTIS G. SCHANTZ and ) | |
| JANE M. SCHANTZ, ) | |
| ) | |
| Plaintiffs, ) | Adversary No. 16-09016 |
| ) | |
| v. ) | |
| ) | |
| FARM CREDIT SERVICES ) | |
| OF AMERICA, PCA, and ) | |
| GROWMARK, INC. d/b/a ) | |
| ADVANTAGE FS, ) | |
| ) | |
| Defendants. ) | |

**RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter came on for telephonic hearing on March 21, 2017. Joe Peiffer appeared for Debtors Curtis Schantz and Jane Schantz ("Debtors"). Doug Lindstrom appeared for Creditor Growmark, Inc. ("Growmark"). Michael Cunningham appeared for Creditor Farm Credit Services of America, PCA ("Farm Credit"). The Court took the matter under advisement. The parties filed briefs. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## STATEMENT OF THE CASE

Farm Credit holds a first priority interest in Debtors' homestead and in the proceeds from the sale of Debtors' farm equipment. Growmark holds a second priority interest in only the equipment proceeds. Growmark argues that the Court should direct Farm Credit under the equitable doctrine of marshaling to collect from Debtors' homestead, allowing Growmark to collect from the equipment sale proceeds. Debtors and Farm Credit argue that Iowa law prevents marshaling in this case because marshaling would diminish Debtors' homestead exemption. The Court agrees with Debtors and Farm Credit.

## STATEMENT OF THE FACTS

The facts are undisputed. Debtors engaged in a farming operation and owned farm machinery and equipment. Debtors also own a home that is exempt as a homestead under Iowa law. The homestead's value is $292,000. Farm Credit and Growmark are creditors in Debtors' bankruptcy with secured claims.

Farm Credit's security interest arose from a March 2013 transaction with Debtors. Debtors entered into a continuing security agreement with Farm Credit. Debtors granted Farm Credit a security interest in all of Debtors' equipment and machinery and proceeds thereof. Debtors also executed a mortgage in favor of Farm Credit on their homestead. Debtors owe Farm Credit approximately $210,163.25.

In December 2013, Debtors entered into a security agreement with Growmark. Debtors granted Growmark a second priority security interest in their farm equipment and machinery and proceeds to secure payment on the Growmark note. Debtors owe Growmark approximately $37,762.22.

In 2015, Debtors sold their farm machinery and equipment resulting in net proceeds of $55,613.08. Farm Credit and Growmark both have liens on these proceeds. Growmark is second in priority behind Farm Credit. The proceeds are being held pending resolution of this dispute.

Debtors filed this adversary to determine whether Growmark or Farm Credit should receive the equipment proceeds. Growmark filed a counterclaim and crossclaim requesting marshaling of assets. The parties dispute only the applicability of the equitable doctrine of marshaling. Debtors, joined by Farm Credit, argue that Growmark's marshaling arguments would violate Iowa homestead law by unnecessarily invading property that is otherwise exempt from Growmark's collection efforts. Growmark argues that marshaling would be consistent with, not contrary to, Iowa's homestead law.

## CONCLUSIONS OF LAW AND ANALYSIS

The parties filed cross-motions for summary judgment. Federal Rule of Civil Procedure 56 applies in adversary proceedings. Fed. R. Bankr. P. 7056. "The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, the parties agree that there is no genuine issue of material fact. Summary judgment is appropriate.

The dispute here is purely legal: whether the Court should marshal Farm Credit's collateral in such a way that Farm Credit would collect against the homestead, which would open up the equipment sale proceeds to Growmark's junior lien. Marshaling is an equitable doctrine "designed to promote fair dealing and justice." Meyer v. United States, 375 U.S. 233, 237 (1963).

### I. The Elements of Marshaling

> There are normally three elements necessary to support a claim for marshaling: (1) the existence of **two creditors** with a **common debtor**; (2) the existence of **two funds** belonging to the common debtor; (3) the legal right of **one of the creditors** to **satisfy its claim from either of the two funds**, and the legal right of the **other creditor** to **satisfy its claim from only one of the funds**.

JBD Pork, Inc. v. Bank of Am. (In re Premier Farms L.C.), Bankr. No. 03-04632, Adv. No. 04-9035, 2004 WL 1175223, at *2 (Bankr. N.D. Iowa May 24, 2004) (emphasis added). All parties agree that these elements are satisfied on the undisputed facts. The Court agrees that the elements of marshaling are met in this case. There are two creditors, Growmark and Farm Credit, with Debtors as common debtor. Debtors have two funds: the equipment sale proceeds and the homestead. Farm Credit has the right to satisfy its claim from the equipment

4

proceeds or the homestead, while Growmark may only satisfy its claim from the equipment proceeds.

Simply because these elements are met, however, does not mean that Growmark is entitled to have the Court apply the doctrine of marshaling.  "[The doctrine of marshaling] deals with the rights of all who have an interest in the property involved **and is applied only when it can be equitably fashioned as to all** of the parties."  Meyer, 375 U.S. at 237 (emphasis added).  The Court must decide whether it can equitably apply the doctrine of marshaling to **all** parties.  In making this decision, "it is well to remember that marshaling is not bottomed on the law of contracts or liens.  It is founded instead, in equity, being designed to promote fair dealing and justice."  Id.

## II.    Homestead

Debtor argues that it would be inequitable to marshal collateral in a way that requires Farm Credit to pursue more of its claim against their home, in which they would otherwise have more exempt equity under Iowa homestead law.  Debtors argue that marshaling in this case would invade their protected homestead equity and allow Growmark, which has no lien on the homestead, to effectively get value from the homestead by pushing more of Farm Credit's secured claim over to the homestead and onto the Debtors' homestead equity.  According to Debtors, marshaling would force Farm Credit to give up its first lien on the equipment

5

proceeds and increase its security on the homestead property and thereby dramatically decrease the value of their homestead exemption. Debtors, joined by Farm Credit, argue that marshaling would thus violate their homestead protection.

### a. Statutory Arguments

Growmark argues that marshaling in this case would not violate Debtors' homestead exemption. Growmark makes these arguments based on the language of Iowa's homestead statutes. Growmark makes some thoughtful and creative arguments to show that, under its reading of those statutes, marshaling would not compromise equitable principles in this case.

Iowa law provides that "The homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary." Iowa Code § 561.16. It also provides that:

> The homestead may be sold to satisfy debts of each of the following classes:
> . . . .
> 2. Those created by written contract by persons having the power to convey, expressly stipulating that it shall be liable, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt.

Iowa Code § 562.21. In Iowa, homestead rights are "jealously safeguard[ed]." In re Meyer, 392 B.R. 416, 419 (Bankr. N.D. Iowa 2008) (citing In re Matter of Bly, 456 N.W.2d 195, 199 (Iowa 1990)).

6

Growmark argues that marshaling would not violate § 561.21, which requires a creditor to exhaust "all other property pledged by the **same** contract for the payment of the debt," because the homestead and non-homestead collateral arise from separate contracts.

The Court is not persuaded by this argument. If the homestead and non-homestead collateral do in fact arise from separate contracts then the third element of the marshaling test (that one creditor is able to satisfy its claim from either of the two funds and the other creditor is able to satisfy its claim from only one of the funds) is not met. Growmark argued that all the elements of marshaling are met in this case. Growmark now appears to argue otherwise—that Farm Credit is not required to proceed first against non-homestead collateral because the homestead and equipment proceeds secure different loans. If that is true, it is a fatal flaw to Growmark's assertion that the marshaling test is satisfied. The third element of marshaling, as noted above, would not be satisfied. The Court will not let Growmark have it both ways on the separate contracts issue. Farm Credit has two collateral sources from the same underlying contract for the debt at issue here.

Moreover, a careful review of the factual record in the proceedings (documents that all three parties agree contain no genuine issues of material fact) show that Farm Credit clearly has two sources of collateral—"property pledged by the same contract for the payment of the debt." § 561.21(2). While there were

multiple documents prepared to support Farm Credit's loan and security agreements—two promissory notes and separate mortgage and personal property security documents—they were treated by both Farm Credit and Debtors as being part of the same transaction and contract. All documents were prepared and signed the same day. They did not specify separate collateral for separate debts (and thus element three could be satisfied). Growmark rightly argued that element three—and thus the whole marshaling test—was satisfied. Growmark cannot turn around at this stage of the analysis and argue that there are separate contracts and separate collateral such that the specific protection of § 561.21 does not apply. The Court rejects the argument for that reason and because it conflicts with the record.

Growmark also argues that marshaling will not violate these specific statutory protections because the homestead will not undergo "judicial sale," Iowa Code § 561.16, or otherwise be "sold to satisfy debts." § 561.21. Growmark points out that Debtors' are reaffirming their debt with Farm Credit on the home and so there would be no judicial sale of the homestead to satisfy debt. As a result, Growmark argues that marshaling in this case would not violate Debtors' homestead exemption because the home will not actually be sold "at judicial sale."

Growmark's argument is not persuasive. Iowa homestead rights are recognized and regularly addressed where an actual "judicial sale" is not certain. The Iowa Supreme Court has said that "the term 'judicial sale' as used in chapter

561 was intended to encompass any judicially compelled disposition of the homestead, whether denominated a 'sale' or not." Matter of Bly, 456 N.W.2d 195, 199 (Iowa 1990). Further, "the benevolent purposes of the homestead statute would be frustrated by giving the term 'judicial sale' . . . a narrow or technical construction dependent upon finding a true 'sale.'" Id. In short, the Iowa homestead right exists apart from judicial sale or pending sales to satisfy debts.

### b. Equitable Arguments

Most importantly, Growmark's statutory arguments ignore the requirement that "[The doctrine of marshaling] . . . **is applied only when it can be equitably fashioned as to all** of the parties." Meyer v. United States, 375 U.S. 233, 237 (1963). Growmark's statutory arguments collapse Debtors' broad homestead protection into certain statutory language—the kind of "narrow or technical construction" that Bly warns against—and ignores the larger issue: Debtors' exempt homestead equity would be diminished by ordering marshaling. Growmark would obtain an advantage it did not have by contract or statute. This would come at Debtors' expense because the marshaling would seriously reduce the value of equity protected by Debtors' homestead exemption.

Growmark argues that applying marshaling in this case would not destroy Debtors' homestead right at all. It claims Debtors already waived their homestead exemption when they voluntarily mortgaged their homestead to Farm Credit.

9

Growmark argues that Debtors will have the same homestead value they otherwise would have had because the homestead will not be used to satisfy Growmark's claim—only Farm Credit's claim. The Court disagrees with Growmark.

"State courts have refused to apply [marshaling] where state-created homestead exemptions would be destroyed" and "[f]ederal courts have likewise accepted this principle of the nonapplicability of the doctrine where, as here, one of the funds is exempt under state law." Meyer, 375 U.S. at 237–38. In Meyer, the Supreme Court "adopt[ed] the state rule" and "refused to marshal assets where to do so will **diminish**" an exemption right. Id. at 239–40 (emphasis added). As a result, if marshaling defeats or reduces a state-created exemption, federal courts will not apply the doctrine. Marshaling in this case would diminish Debtors' Iowa homestead exemption by reducing otherwise protected homestead equity in order to open up non-homestead collateral for Growmark.

This Court finds that First National City Bank is directly on point. First Nat. City Bank v. Phoenix Mut. Life Ins. Co., 364 F. Supp. 390 (S.D.N.Y. 1973). That case applied Meyer to a voluntary mortgage on a homestead. Id. at 391. The debtor gave First National City Bank an interest in life insurance proceeds as collateral. Id. The debtor later executed a mortgage on his homestead in favor of the same bank as further collateral. Id. Thus, the bank could collect against the insurance proceeds or the homestead. Id. The government, another creditor of the

10

debtor, argued that the court should order the bank to collect against the homestead under the doctrine of marshaling.  Id. at 392.  The Court rejected the government's attempt to free up the debtor's non-exempt life insurance proceeds to the government's collection efforts and held that: "Marshaling of the assets in the instant case would violate both the specific holding of Meyer v. United States and the above-quoted Supreme Court guidelines for applying the doctrine," reasoning that "[a] result which would essentially compel foreclosure of the mortgage . . . is inconsistent with the language of Meyer."  Id. at 393.

    The Court believes that this rationale entirely disposes of this case.  Meyer applies here and compels the Court to find that marshaling should not be applied when its effect is to defeat a state exemption—particularly an Iowa homestead exemption.  The Iowa Supreme Court has said that the doctrine of marshaling:

> has long been recognized in Iowa, but "it is never applied, unless it can be done without injustice to the creditor, or other party in interest, having a title to the double fund, and also without injustice to the common debtor."  Dickson v. Chorn, 6 Iowa (Cole) 19, 32 (1858).  Many of our cases indicate that this doctrine is **not applied where to do so would interfere in any way with the debtor's homestead rights**.

Gaumer v. Hartford-Carlisle Sav. Bank, 451 N.W.2d 497, 501 n.1 (Iowa 1990) (emphasis added).  Following this authority, the Court accepts the "principle of the nonapplicability of the doctrine where, as here, one of the funds is exempt under state law."  Meyer, 375 U.S. at 238.  The Court will not apply marshaling here

11

because it would—at a minimum—interfere with the value of Debtors' homestead exemption.

## CONCLUSION

**WHEREFORE**, Debtors' motion for summary judgment is GRANTED.

**FURTHER**, Farm Credit's motion for summary judgment is GRANTED.

**FURTHER**, Growmark's motion for summary judgment is DENIED.

Dated and Entered:

August 7, 2017

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE